RUDOLPH, ordinary, for use, *v.* UNDERWOOD, adm'r, *et al.*

1. Disbursements by an administrator not embraced in his annual returns allowed by the ordinary, must be shown by him to be proper disbursements in order to take credit for them in an action upon his bond.

2. Adult heirs or legatees of an estate who seek to repudiate a sale by the administrator on the ground that he was interested individually with the purchaser in making the purchase, must do so within a reasonable time. After long acquiescence with knowledge of the transaction, the sale will be taken as fair and legal.

3. Where the administrator has a joint judgment against three of the distributees, he cannot set off more than two thirds of it to an action brought for the use of two of them, without showing that there is nothing due from the estate to the third. If, after such judgment was obtained, the administrator voluntarily paid the latter out of the assets of the estate without retaining his *pro rata* share of the judgment, the amount so paid should be treated as a credit on one third of the judgment, or as a discharge of one third thereof if the payment so made was in excess of such third.

4. A voluntary dismissal of a suit by the plaintiffs who brought it will not amount to an adjudication of the matter in controversy because the suit was not renewed within six months thereafter.

5. For taxes accrued upon land after it has been sold by the administrator, the estate is not liable; but it is liable for taxes assessed upon the land before it was sold, though the assessment was made in the name of one of the heirs or legatees. The burden of showing that the assessment was made when the estate was liable for the taxes, and that the amount paid was alone for taxes on the property of the estate, rests upon the administrator.

6. An administrator is not bound to put the purchaser of land lawfully sold by him in possession, and he cannot charge the estate with the expenses of litigation undertaken and conducted by him for the purpose of ejecting heirs or legatees in possession and who set up an adverse claim after the sale; nor can he charge such heirs or legatees with their *pro rata* of such expense in accounting with them for the proceeds of the sale.

7. The administrator is entitled to his expenses legally incurred in resisting unsuccessful suits against him to set aside a sale which he had made of land belonging to the estate. And if the records of such suits be lost or destroyed, parol evidence is admissible to show that the suits were brought and defended.

8. Where a plaintiff usee in a suit testifies, in effect, that no payment was made to her deceased co-usee in her presence, the de-

fendant is not a competent witness to prove a payment to such deceased, unless he testifies that it was made in the presence of the witness whose testimony is sought to be thus answered.

9. Where the bill of exceptions and the judge's certificate both conform to the act of 1889 for bringing cases to this court, and the error complained of is the overruling of a motion for a new trial, the writ of error will not be dismissed because this court may be of opinion that some parts of the record specified are not material.                                              *Judgment affirmed.*

December 28, 1891.

Administrator. Bond. Sale. Set-off. *Res adjudicata.* Tax. Evidence. Practice. Before Judge WELLBORN. .Hall superior court. July term, 1891.

The action. was by Rudolph, ordinary, for the use of Mary Boswell, the child, and N. M. Wright, J. A: and R. T. Staten, the grandchildren of Ransom Barnes, on the bond of Underwood as administrator with the will annexed of Ransom Barnes, alleging that this bond was given on January 7, 1867; that Underwood took charge of the estate of the value of $20,000, and in December, 1868, sold real estate to the amount of $1,050; that other large amounts came into his hands to be administered, but he has neglected and refused to pay petitioner anything for his usees, and neglects and refuses to make returns; that Mary Boswell is entitled to one distributive share of the estate, and the other usees to one in right of their mother Susan Staten, deceased. The case was formerly before the Supreme Court. 84 *Ga.* 79.

On July 24, 1890, the declaration was amended by striking the names of N. M. Wright, J. A. and R. T. Staten as usees, and making R. T. Staten a party as administrator of Susan Staten. And further, by charging that Underwood combined with C. Cavender and others to defraud the estate out of land belonging thereto, lying in Gordon and Calhoun counties, which at the time of the pretended sale to Cavender was worth $4,-000; that in order to carry out the fraudulent scheme the administrator advertised the land for sale without

reducing it to possession and while it was held adversely to him by Ransom Barnes jr., and went through the forms of a sale, when it was knocked off to Cavender at $1,050; that at the time there was nothing paid for the land, nor did the administrator make Cavender a deed; that afterward the administrator brought suit for the land, which resulted in a compromise verdict for the land in his favor, and then, instead of advertising and selling it according to law, allowed Cavender to take it for $1,050, when if then sold it would have brought $4,000; and that he and his securities should be held liable for the $4,000, its true value.

The defendants pleaded not indebted, payment in full to plaintiffs of their distributive shares in 1874, and the statute of limitations of twenty years. Further, that the entire subject-matter of the amendment of July, 1890, was by the plaintiffs sued on and embraced in a bill in equity in Gordon superior court to set said sale aside in 1875, and that about four or five years thereafter they dismissed the bill, and more than six months having elasped since such dismissal and before the filing of the amendments, the same is barred; that the court-house of Gordon county was burned down in 1888, and the record of said case destroyed, and therefore they cannot attach copy of the equity proceedings. Further, that defendants are not guilty of the wrongs, etc., charged in the amendment; and that the sale of the Gordon county land was fair, honest and to the highest bidder, after advertising according to law, when defendant Cavender (one of the securities sued), the highest and best bidder, became the purchaser for $1,050, which was a very fair valuation for the property. Further, that plaintiffs at the commencement of the action were and still are each indebted to defendant Underwood, administrator, $450 principal, with interest, and $84.90 costs, on a judgment obtained in Gordon superior court,

February 21, 1874, in favor of Underwood, administrator, against them and Ransom Barnes jr., on which judgment a *fi. fa.* was issued, on which there was a return of *nulla bona* in March, 1878. that in November, 1879, a cost *fi. fa.* upon the judgment was issued, and neither the judgment nor any part of it has ever been paid, the amount of it at the commencement of plaintiffs' action, January 9, 1888, being $970.65 for rent of farm in Gordon county, $150 each for 1874 and 1875, also for $210 cash paid to Mary Boswell by the administrator, and $100 cash paid Susan Staten February 21, 1882, as part of their distributive shares, the payments to Mary Boswell being $100 in May, 1876, ' and $110 in February, 1892; that Mary Boswell therefore owes Underwood $1,330.65 with interest on the principal of the judgment, and that R. T. Staten, if he is the legal administrator of Susan Staten, owes him $1,230.65 if the whole of the judgment for $450 is to be collected from either of the usees, and if it is to be collected from both, Mary Boswell owes him $845.32½, and the representative of Mrs. Staten $735.32½ for which defendants pray judgment; that the judgment the administrator holds against each one of the usees and Ransom Barnes jr., is joint and several, and therefore the whole amount of the judgment is due from each one; that plaintiffs and Ransom Barnes are hopelessly insolvent, and plaintiffs are attempting to collect from Underwood, the principal on the administrator's bond, as legatees under their father's will; that Underwood has fully administered the estate and paid out all of it and more too, counting his expenses in attending Gordon superior court for twelve or fifteen years, while attending litigation carried on by the plaintiffs; so that it would be inequitable and unjust to allow them to recover distributive shares out of Underwood the principal, while indebted to him by

judgment and otherwise in a much larger sum in the same capacity. Wherefore defendants pray the intervention of the court as a court of equity, and that the set-off be allowed, as the indebtedness of plaintiffs is larger than any distributive share could be to them under the will. Defendants further pleaded that Underwood and the plaintiffs made a final and complete settlement about February 23, 1882, of all his actings and doings as administrator, and of all the plaintiffs were due the estate, etc.

There was a verdict for defendants; plaintiffs' motion for a new trial was overruled, and they excepted. The motion assigns error upon the following parts of the charge of the court:

1. "In determining under this plain charge whether the defendant has anything in his hands that he has not disbursed, you will do that in the light of this testimony and by making this calculation. If the defendant insists he has made his disbursements, it is incumbent upon him to show how he has made them. You will take the sums received and the sums paid out, and you will be able to ascertain whether there is a balance in his hands, or whether there is a balance in his favor, or whether the disbursements simply equal the receipts. If the disbursements and receipts are equal, then the administrator would have accounted for the effects in his hands. If it should appear that he has disbursed more than he has received, then of course he would still have accounted for all that went into his hands and would not be liable on that." Assigned as error because, though the administrator had disbursed all that came into his hands, he would still be liable unless he paid it out to those who were entitled to receive it.

2. "I charge you, if this land belonged to the estate, that the administrator had a right under the terms of the will that was annexed to his letters of administra-

tion, that it was his duty to sell the land and to sell it at public outcry to the highest bidder. If he did so sell it to the highest bidder, he would be chargeable with the amount that it brought at such sale. If it was insisted at the time or thereafter that the sale was an illegal one, or that he was the purchaser at his own sale, or interested in that sale, it could only be attacked as a sale in which he was interested, within a reasonable time. And if those who were interested in the estate waited an unreasonable time before complaining of the sale, the sale would be deemed to be legal, and the administrator would only be chargeable with what he received at the sale." Error, because the administrator is chargeable with the amount he received for the land, whether it was or was not insisted on at the time of the sale or afterwards that he was interested in his sale; and no time will bar the right of those entitled to receive it from demanding and receiving it.

3. "It is insisted that some of their payments were not proper payments, and I will call your attention to them in a few moments, *seriatim*, and give you the rule in reference to them. Before I proceed to do that, I want to state further in this matter of expense upon the defendant here, he does not insist upon the part of some of these plaintiffs that he can exhibit receipts signed by them, but exhibits such state of accounts between him and them that demonstrates that they have received, either in money or by way of being allowed credit for what they were due the estate at the time, all they were entitled to. In other words, in the defendant's plea of settlement, in order that it should have the effect that he insists, you must be satisfied from the evidence that the plaintiffs here were due the estate certain sums which the administrator estimated as money paid them in making his settlement with them. He insists that he had a judgment against them there for a certain sum of money, and in the set-

tlement this was to be treated as money in their hands, and in so treating it they were paid all they were entitled to. If he did this, then that would be a settlement if he paid them all they were entitled to." Error, because the court intimated to the jury, by the use of the word "demonstrates," that the defendant had paid out all the effects that came into his hands; and because there was no proof of a settlement between the parties, and if the defendant did estimate the judgment at what he claimed, it was error to charge that there was a settlement, unless the plaintiffs agreed to the terms of the settlement.

"The plaintiffs insist that judgment could not be enforced because it was barred by the statute of limitation and for other reasons, but the statute of limitation is not necessarily settled. If it was the understanding that was to be estimated in the settlement that was made, and it was so made, then it would not make any difference whether it was barred by the statute or not. The plaintiffs insist further, under different heads, that they are not chargeable for this judgment for certain reasons. The defendant sets it up under the head of another plea, his position being this: that if it should be held that the settlement that he claims to have made with the parties was not a binding settlement or agreement so as to embrace this judgment, then he has a right to set it off; if he still owes them their part of the distributive shares, that they still owe him the amount of this judgment obtained against them. On that subject I charge you, unless more than ten years have elapsed since the last entry made by an officer to the commencement of this suit here, that it would not be a bar, and the defendant might plead it as a set-off as far as it goes against any demands that the plaintiffs might have against him. In other words, they would have to account, they being heirs of the estate. They would have to account in

some way and at some time for this debt, just as they would for payments or advancements by the administrator." Error, in assuming a valid judgment against the plaintiffs and a right to set it off in this suit, when one judgment is set off against another on motion and not pleaded as a set-off unless some good equitable reason is pleaded and shown to justify it; and in holding that the judgment ran for ten years instead of seven when the bar of the statute attached.

4. "The allegation is made here in this case by the plaintiffs, that there was fraud and collusion between the defendant and other parties named, to the detriment of the estate and its damage. The defendant makes two replies: In the first place, he says that matter has all been passed upon one time. Whether he acted fraudulently and colluded with anybody and damaged the estate, is a matter he insists has already been passed upon by a court. The rule is, a party cannot constantly sue on the same thing, where there is a matter of controversy between two parties and it is settled and settled according to certain rules I will give 'you later on. The first reply to that charge of the plaintiffs is the plea of res adjudicata. He says, some years ago these plaintiffs brought suit against him in which they made the same allegation, sued him for damage to the estate because of fraud and collusion and confederacy, the same charge they make in this case. Whether or not it is the same charge, of course is a matter of proof. You have heard the evidence in regard to that, about what they charged in this other suit, if you believe there was a suit. I simply give you the law. If you believe these plaintiffs commenced suit heretofore against the defendant, in which they sought to recover of him for the same cause that they set up now in this amended plea, and they appeared and dismissed their own suit and paid the costs, and did not commence it again in six

months, that would be an adjudication of that question, and they would not be heard in a new suit afterwards to litigate that matter again; so if that is the state of facts as you believe them, that particular feature of the case would be eliminated from it, cancelled, and you would determine whether or not under other phases of the case the plaintiffs would be entitled to recover." Error, because the six months statute only applies to save a case from the statute of limitation when it attaches pending the suit; and because there was no adjudication of that suit, it having been dismissed by the plaintiffs.

5. "It is insisted that some certain vouchers are not proper ones, that is, one for taxes, receipts that purport to be in payment of the tax of Ransom Barnes for a certain year. I charge you, that on its face would not be a proper voucher, would not entitle him to charge the estate for that sum. The estate is not bound for the individual tax of the heirs of the estate. It is insisted that this was for tax on the land that was in dispute, that he claimed belonged to the estate; that Ransom would not pay it; and that he had to pay it to prevent still further complication arising from this estate. I charge you, if that was true, if affairs were in such a situation that the property would have been levied on and sold by virtue of this *fi. fa.*, and the administrator paid it off to prevent a sale of the land under it, he would have been right in that case, and he ought to be allowed that amount." Error, because the land had long since been sold by the administrator, and there was no proof that it was alone for the tax separate from Ransom Barnes' other taxable property, and no proof that the land would have been levied on and sold for its taxes by virtue of this tax *fi. fa.*

6. "If the administrator was in possession of this land, either through himself or through tenants of his who were heirs of the estate, at the time the sale

occurred, then it would not be an illegal sale for the reason that it was adversely held; he would have a right to sell it. If after he did sell it a claim to it was interposed by the plaintiffs in this case, heirs at law, insisting it was their land and did not belong to the estate, that it was not for distribution but belonged to them, that they were not there as tenants, thus preventing him from turning over the property to the purchaser and thereby getting the purchase money, then that would be the fault of the heirs so in possession of the land and so asserting title to it, and not the fault of the administrator. . . I have already charged you upon the subject of whether the title passed or did not pass at the sale. I have charged you that, in strict law, if this land was held adversely at the time of the sale, the title did not pass. It is immaterial how that really was, if the administrator acted honestly and in good faith, sued the parties for the land instead of the purchaser; before they could ask him for the money they must appear faultless. I charge you that the three heirs that did not have anything to do with this would be heard to say that the administrator ought to have sued some one else and not them. But if you believe these three heirs put the administrator in such a situation that he ought to have sued them and sell this land over, and he incurred expense, and actually paid it out of the effects of the estate, then they cannot be heard to complain of it." Error, because the administrator, after recovering the land, should have resold it and accounted for what he got at the last sale, instead of what he got at the first; and the charge was calculated to confuse the minds of the jury.

7. The motion further alleges that the court erred in admitting in evidence, over objections of plaintiffs, the testimony of Underwood as to the bringing of the bill in Gordon superior court; after it appeared that the bill had been dismissed without a trial thereon, the matter

could not be *res adjudicata*. Also, that the court erred in allowing Underwood to testify that Ransom Barnes brought another suit against him of similar character, after the one that had been dismissed, which other was afterwards dismissed, over the objection of plaintiffs upon the ground that Ransom Barnes is no party to this suit, and the plaintiffs here were no party to that suit, and no foundation was laid for the introduction of secondary evidence. The record does not show documentary evidence that Ransom Barnes brought suit against Underwood after the dismissal of the bill, but does show that Underwood was allowed to testify that after the bill was dismissed, there was another case of similar character brought against him by Ransom Barnes, which was dismissed in a year or two after it was commenced, about the time the alleged settlement was made in 1881 or 1882.

8. Also, that the court erred in allowing Underwood to testify that he had paid Mrs. Staten, through one Hammond, $100, over objection of plaintiffs on the ground that Mrs. Staten was dead. In a note to this ground the judge states that the testimony of Underwood was admitted only in so far as it was a reply to the testimony of Mrs. Boswell, who testified that he did not pay Mrs. Staten anything.

9. In the Supreme Court, counsel for the defendants moved to dismiss the writ of error, on the ground that the bill of exceptions does not comply with the act of November, 1889, in regard to carrying cases to the Supreme Court, but is an attempted evasion of both the letter and spirit of said act, in this: it attempts to carry up the whole of the record and brief of evidence by specifying all the parts as material, those which are not material as well as those which are material to a clear understanding of the errors complained of.

J. M. TOWERY and G. H. PRIOR, for plaintiffs.

J. J. KIMSEY and H. H. DEAN, for defendants.